# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Marcia Valentine,

                Plaintiff,       Case No. 13-cv-10888

                                  Hon. Judith E. Levy

v.                           Mag. Judge Mona K. Majzoub

Jones Lang LaSalle Americas, Inc.,
and Kone, Inc.,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT KONE, INC.'S MOTION TO EXCLUDE EXPERT REPORT, OPINIONS, AND TESTIMONY OF C. STEPHEN CARR, Ph.D. [31] AND MOTION FOR SUMMARY JUDGMENT [32]

This is a personal injury case. Pending are defendant KONE, Inc.'s motion to exclude the report, opinions, and testimony of plaintiff's expert, C. Stephen Carr, Ph.D. (Dkt. 31), and motion for summary judgment. (Dkt. 32.)

I.    Background

This arises from the same incident outlined in the Court's prior opinion and order granting defendant Jones Lang LaSalle Americas, Inc.'s motion for summary judgment. (Dkt. 37.) The Court accordingly

adopts that statement of facts in relation to the July 20, 2012 trip-and-fall incident on elevator Unit 9 that gives rise to this litigation.

A. KONE's Role

Defendant KONE, Inc. ("KONE") is the designated elevator maintenance and service contractor for Cadillac Place, the building where plaintiff's accident took place. The State of Michigan owns Cadillac Place, and awarded KONE the maintenance contract for the building on May 1, 2012. Prior to that contract, elevator maintenance and service was performed by Otis Elevator Company ("Otis"). KONE's route technician, David Boyd, serviced elevator Unit 9 on two occasions prior to July 20, 2012: once on June 25, 2012, fixing Unit 9 after it "timed out," and once on July 6, 2012, performing routine monthly maintenance on the elevator. Boyd determined that the elevator was running properly after performing the monthly maintenance.

On July 20, 2012, Unit 9 misleveled and began oscillating, causing plaintiff to trip and fall into it, sustaining injuries. Thirty minutes after plaintiff's incident, Boyd arrived at the site, observed the oscillation, took Unit 9 out of service, and requested that KONE send a service team to investigate the problem. On July 23, 2012, Boyd, along with a

2

City of Detroit Elevator Inspector, returned to investigate the unit further.  The City Inspector witnessed the oscillation, and ordered Unit 9 removed from service pending repairs and re-inspection.

On August 8 and 9, 2012, KONE mechanics Todd Parker and Mark Smith went to Cadillac Place to diagnose and repair Unit 9. Parker, assisted by Smith, used a tool called a "mag probe" not routinely carried by route mechanics such as Boyd, to discover that the oscillation was caused by residual magnetism between the two iron brake cores in the Unit 9 brake.[1]

---

[1] As set forth in KONE's motion for summary judgment (Dkt. 32, at 6-7) the Unit 9 brake functions by using magnetism to release the brake. The brake in Unit 9 is always set whenever the elevator is not in use. When the elevator moves, the brake coil energizes the iron brake cores, creating a magnetic field that brings and holds the cores together. When the elevator reaches its destination and needs to stop, the coil is de-energized, separating the cores and setting them into place.  A counterweight drops as the brake sets, which keeps the elevator balanced.

In this case, the cores were getting too close together when the coil energized.  Because the cores were too close together, the magnetic field lingered longer than it should have.  The residual magnetism delayed the setting of the brake, which delayed the dropping of the counterweight.   Because the counterweight dropped too late, the elevator misleveled, raising it two inches higher than it should have been.  The elevator attempted to correct the misleveling, but in doing so reset the brake, which caused the counterweight to drop late again,

Parker and Smith fixed the Unit 9 brake by disassembling it entirely, replacing the shim between the brake cores, adjusting the brake coil, and reassembling the brake over a period of two days. The City Inspector re-inspected Unit 9, and returned it to service on August 17, 2012.

B. Plaintiff's Expert, C. Stephen Carr, Ph.D.[2]

C. Stephen Carr holds a Ph.D. in mechanical engineering. He is a practicing engineer and engineering manager. He is a member of the National Association of Elevator Safety Authorities, the National Association of Elevator Contractors, the International Association of Elevator Consultants, the American Society of Mechanical Engineers and various Code Writing Subcommittees of ASME, and the National Interest Review Group. Dr. Carr focuses his work on the forensic investigation of vertical transportation accidents, and has worked in forty-five states, Puerto Rico, the District of Columbia, and Alberta,

---

thereby pulling the elevator up two inches. This pattern would repeat as long as the elevator was running.

[2] Although both parties provided Dr. Carr's report, neither party provided Dr. Carr's curriculum vitae or other background materials. As such, the Court will provide his background as thoroughly as possible from what is set forth in the briefs.

Canada in the past decade.  He has served or is serving as an expert witness in over 420 cases.

Plaintiff retained Dr. Carr to offer expert testimony in this litigation.  On November 21, 2013, Dr. Carr prepared an eight-page report containing eight substantive paragraphs laying out his opinions related to KONE's liability.  It states in relevant part:

> 23. My investigation is ongoing.  I need maintenance records for the elevators in the bank including elevator #9 to proceed further.  I have not visited the site nor inspected, measured and tested the equipment nor read the reports of the Defense Expert(s).  Therefore, I reserve the right to supplement this Report as more information becomes known.  However, based upon the information that I have been provided thus far and my experience in this field and a reasonable degree of engineering certainty, I render the following findings.
>
> 24. It may be inferred that the harm suffered by Marcia Valentine because of the events that happened that day do not normally occur but for negligence of the Defendants.
>
> 25. Clearly the Plaintiff, Marcia Valentine, played no role in causing the elevator malfunction that she experienced.  Kone and the building owner had exclusive control of the equipment that caused her harm.
>
> 26. Of course a properly working elevator does not operate the way elevator #9 did at the Cadillac Place Building on 20 July 2012 but for the negligence of the Defendants.  The

rapid floor movements, up and down, were the result of the age of the equipment and its need for maintenance.

27. In most states, the owner/operator of vertical transportation equipment is considered a Common Carrier and held to a higher standard of care, a non-delegable duty. Given these common carriers requirements, it is reasonable to conclude that the preventive maintenance program of Kone was insufficient to meet their obligation.

28. The Standard of Care in the elevator industry is to do what a prudent maintenance organization would do to keep the equipment running safely and protect the public. Older equipment must be maintained to operate like new with few if any callbacks.

29. All these Defendants had a duty to the public including Marcia Valentine to provide safe elevator service. The defendants clearly breached that duty. Their breach was the proximate cause of the incident that resulted in the injury of the plaintiff.

30. There are approximately 1,000,000 working elevators in this country and 99.97 percent of them simply do not function as elevator #9 at the Cadillac Place Building did in July of 2012. The defendants should have recognized this.

(Dkt. 31-2 at 11-12.)

In preparing his report, Dr. Carr reviewed KONE's incident report, the documents the City of Detroit generated following its inspection, and the deposition transcripts of KONE employees Boyd,

6

Parker, and Smith.  He also reviewed two professional publications and the KONE Maintenance Manual.  According to his report, Dr. Carr did not review any further maintenance records or inspect the elevator itself.

## II.   Standard of Review

The admissibility of expert reports and testimony is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 580 (1993).  The requirements of Rule 702 and *Daubert* cover all forms of knowledge referenced in Rule 702: scientific, technical, and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  When evaluating expert testimony, "[t]he focus . . . must be solely on principles and

methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir.2002)).

III.   Analysis

The Court will first address KONE's motion to exclude Dr. Carr's report, opinions, and testimony, and then its motion for summary judgment.

A. Dr. Carr's Report, Opinions, and Testimony Do Not Meet the Standards of Fed. R. Evid. 702

Dr. Carr, in addition to the written report quoted above, elaborated on his theory of KONE's liability at deposition on May 1,

2014.  Dr. Carr is of the belief that brakes like the one at issue should be visually inspected once every two years, although he cited to no supporting manual, publication, or customary practice in support of that belief.  (Carr. Dep. 54:18-25, 58:3-23.)  After repeated questioning, Dr. Carr could provide no basis for this inspection standard, and instead seemed to reframe it as KONE's obligation to perform the inspection, regardless of when or if it had been done within the two-year timeframe by the prior contractor.  (*See, e.g.*, id. at 60:13-25, 61:1-17.) Dr. Carr was not aware if such an inspection had been done, because he had no records from KONE's predecessor, Otis.  (Id. at 55:1-6.)  Dr. Carr's theory of liability, therefore, is fundamentally premised on KONE having failed to perform an inspection on a timetable of Dr. Carr's own creation.  Even if he had a basis for this timetable, Dr. Carr could not reliably conclude that the inspection needed to be performed during the time KONE was the maintenance and service operator for Unit 9 prior to plaintiff's fall.

As a threshold matter, an expert witness must possess "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R.

Evid. 702. "Knowledge" under Rule 702 requires "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. An expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

It is proper to exclude testimony where an opinion is too speculative, or is simply a hypothesis presented in the guise of knowledge. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (rejecting expert testimony under Rule 702 where an expert's theory was hypothetical and unsupported by factual or scientific evidence). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997) (citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)).

Dr. Carr's report begs the question of KONE's liability. It assumes that, because a mishap occurred, the mishap is, by necessity, the result of KONE's negligence. The report, however, never states the factual, scientific, or technical basis for a determination of negligence

other than Dr. Carr's apparent belief that a maintenance and service operator is *per se* negligent when a mishap occurs. Dr. Carr's deposition testimony elaborates slightly on the basis for KONE's negligence, but provides no real factual basis for his opinion.[3]

It is undisputed that Unit 9 malfunctioned because of an issue with residual magnetism in the brake cores. Dr. Carr's opinion that the issue occurred because of KONE's negligence, however, is no more than speculation. There is no factual basis for Dr. Carr's proposed two-year brake core inspection schedule, and even if there were, there is no evidence that such an inspection was not completed. There is no factual basis for Dr. Carr's belief that KONE should have inspected the brake in the two-and-a-half months it was maintaining and servicing the Cadillac Place Building elevators, particularly as Dr. Carr did not review the relevant inspection records. Dr. Carr's theory lacks support in the record, and would require a finder of fact to simply accept his

---

[3] Pursuant to Fed. R. Civ. P. 26(a)(2)(B)(i), an expert report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005). Here, Dr. Carr appears to supplement his report by providing additional theories of liability at his deposition. Out of an abundance of caution, the Court will address those issues despite the fact that they are not set forth in his report.

conclusion that KONE was negligent, based on no supporting knowledge for that conclusion.

The Court has no doubt that Dr. Carr generally possesses a great deal of knowledge about elevator incidents. In this matter, though, Dr. Carr's report, testimony, and opinions lack a reasonable basis in fact. Accordingly, the Court will grant the motion to exclude Dr. Carr's report, testimony, and opinions, and will consider the motion for summary judgment without them.

B. Summary Judgment Is Warranted

To prove negligence under Michigan law, a plaintiff must show a duty, a breach of that duty, cause-in-fact and proximate causation, and damage. *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21 (2009). "[U]nder Michigan law, a legal duty is a threshold requirement before there can be any consideration of whether a person was negligent by breaching that duty and causing injury to another." *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 99 (1992).

KONE argues that its only duty was to the State of Michigan, the owner of Cadillac Place, with whom KONE had its maintenance and repair contract. The Michigan Supreme Court has stated that "the

12

threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.  If no independent duty exists, no tort action based on a contract will lie." *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467 (2004).  The question is thus "whether, *aside from the contract*, the defendant owed any independent legal duty to the plaintiff." *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 489 Mich. 157, 171 (2011).

The Court in *Loweke*, clarifying *Fultz*, stated that "[u]nder *Fultz*, a contracting party's assumption of contractual obligations does not extinguish or limit separate, preexisting common law or statutory tort duties owed to noncontracting third parties in the performance of a contract." *Loweke*, 489 Mich. at 172.

Plaintiff argues that KONE breached a duty of due care owed to her.  Under *Loweke*, a separate legal duty could arise from, among other sources, the "generally recognized common-law duty to use due care in undertakings." *Id.* at 170.  Further relying on *Clark v. Dalman*, 379 Mich. 251 (1967) and *Laier v. Kitchen*, 266 Mich. App. 482 (2005), plaintiff argues that KONE had a duty to "use due care or to act so as

not to unreasonably endanger the person or property of another."
*Clark*, 379 Mich. at 261.

Although unclearly pled, the scope of KONE's alleged duty
appears to have been the requirement to inspect the elevator brakes.
Relying on the report of KONE's expert, Jon B. Halpern, P.E., plaintiff
argues that the inspection should be performed annually. (Dkt. 36-6, at
5 ("Kone Inc. had no notice of any problem that gave it any indication
that the brake was faulty and required a repair and the brake module
should have been performed earlier than when normally scheduled on
an annual basis.").)

Plaintiff then states, unsupported by the record, that KONE
should have performed this annual brake inspection in the two-and-a-
half months it was performing elevator maintenance and repair, but did
not. Plaintiff asserts, also without supporting evidence, that KONE
failed to review prior maintenance records and instead restarted the
maintenance calendar, thereby pushing off the dates for routine
maintenance and inspection.

First, the Halpern statement indicates not that KONE missed or
forgot to schedule its brake inspection, but that such an inspection was

"normally scheduled on an annual basis," and the time for that repair had not yet come.   (Dkt. 36-6, at 5.)   Other than the excluded assumptions of her expert, Dr. Carr, plaintiff raises no genuine issue of material fact as to whether KONE failed to perform the scheduled brake inspection in a timely fashion.

Second, plaintiff's argument may be barred by law.   KONE's responsibility to inspect, maintain, and repair the elevator was governed by its contract with the State of Michigan.   The Court's directive in a case such as this "is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty *apart from the defendant's contractual obligations to another*."   *Loweke*, 489 Mich. at 169 (emphasis added).   An independent legal duty outside of a contract arises when, through performance of contractual duties, "a duty . . . arise[s] to perform the act in a nonnegligent manner." *Fultz*, 470 Mich. at 465.   Where the party under contract simply fails to perform its contractual obligations, as plaintiff argues Kone did here, that failure "create[s] no new hazard to plaintiff." *Id.* at 469.   At best, plaintiff

15

appears to allege a breach of contract, rather than a violation of an independent duty outside of the contract.[4]

Ultimately, plaintiff's argument fails because, even were the Court to assume that KONE had a duty to plaintiff, there is no question of material fact as to whether KONE violated any such duty. Plaintiff's expert's testimony is inadmissible, and the facts otherwise presented amount to little more than a conclusory supposition that KONE must have breached a duty, with no facts establishing the nature of the breach. Accordingly, the Court must grant summary judgment and dismiss plaintiff's complaint against KONE.

---

[4] Plaintiff's briefing can also be read to argue that KONE had a separate duty to either redo all maintenance, whether scheduled or not, immediately after beginning its performance under the contract, or to review prior maintenance records and correct all oversights by Otis. If this is plaintiff's argument, she failed to provide evidence to support it. The former argument amounts to plaintiff attempting to add terms to KONE's contract that are not there. With respect to the latter argument, even if plaintiff could have or should have reviewed prior maintenance records, plaintiff did not present any evidence to suggest that KONE did not undertake such a review upon entering into the contract with the State of Michigan.

IV.   Conclusion

For the above stated reasons, it is hereby ordered that:

Defendant KONE, Inc.'s motions to exclude the expert reports, opinions, and testimony of Dr. C. Stephen Carr (Dkt. 31) is GRANTED;

Defendant KONE, Inc.'s motion for summary judgment is GRANTED; and

Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.


Dated: September 30, 2014                    s/Judith E. Levy
Ann Arbor, Michigan                          JUDITH E. LEVY
                                             United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2014.


                                             s/Felicia M. Moses
                                             FELICIA M. MOSES
                                             Case Manager

17